Judge Owsley
delivered the Opinion of tho Court..
in pursuance of a contract between these parties* for the sale and purchase of a tract of land in Fayette county, the following writing was executed, VÍZ;
“Articles of agreement made and entered into, this first day of May, 1818, between Robert Chambers of Fayette county and State of Kentucky, of tbe one part, and Peter Mason, of the county and State aforesaid, of tbe other part, witnessed/, that tho said Chambers hath this day sold to the said Mason, the tract or parcel of land he now lives on. bounded by Mason, Randolph^ Patterson, and supposed to contain one hundred and ten acres, be tbe same more or leiss, at tho price of thirty-five dollars per acre, payment to be made in the following manner, to-wit: Three hundred dollars to be paid in the month of June, and the balance to be paid the 25th of December next, at which time I bind myself, my heirs, executors, administrators, &c. to convey said land by a deed of general warranty, for the true performance of which, we bind ourselves to each other, in the penal sum of S6000, given under our hands and seals the day and dato above written.”
i?. C. (Seal.)
P. M. (Seal.)
Upon this writing, there is endorsed in part of the first payment, a credit for fifty dollars, received the first of May, 1818, and on the fourth of June of the same year, a memorandum was made thereon* and signed by Chambers, of the following import: “Received of Peter Mason, four hundred dollars, in part of the within named land, and it is agreed, by the. within named R. Chambers, to pay interest at six per centum per annum, for all the money received* until possession is given to said Mason,’3
Bill for recission and injunction against judgment for the purchase money.
First grounds as to the title relied on for rccission, overruled on the proofs.
Second ground also overruled oii the proofs.
To be relieved from the payment of the purchase money, which had been sued for by Chambers, arid judgment recovered for at Idw, and to obtain a cancel ment óf the contract, Mason exhibited his bill in equity with injunction. In as much as the points upon which the cause must turn, may be distinctly percieved by adverting to the grounds upon which Mason relies to cancel the contract, it is deemed useless to set out the various allegations of the parties contained in the bill and answer.
Tiie first ground relied on, relates to an alleged defect in tile title of Chambers to the land. The tract sold by Chambers, is part of Samuel Meredith’s military survey of two thousand acres, and the defect in the title is alleged to consist in there having been no regular deed of conveyance from the patentee Meredith to his son Samuel, under whom Chambers claims. , This objection to the title will, however, be found to have no foundation, by adverting to a deed from Meredith the father to his son, contained in the record. That deed is proved to have been taken from a bundle of papers which wore preserved at the burning of the Clerk’s office of Fayette, where it was lodged to be recorded, and though not drawn with the greatest accuracy and precision, and is somewhat mutilated, it contains enough to prove incontestibly, that the title was conveyed by Meredith, the patentee and father to his son.
But admitting this objection to the title to be removed by the production of the deed, it was contended in argument, that the existence of the deed was unknown to Chambers when he contracted to sell the land, and havirig, when he supposed there was no such deed, failed to disclose the fact to Mason at the time of making the sale, it was insisted the contract was not made in good faith, and ought to be cancelled, especially, (as was contended in argument,) as in consequeirce of doubts about the existence of such a deed, Mason was prevented from disposing of the land, until by the fall of the value of that description of property, it would not command half the amount he conlracted to give.
*320 The forcé óf this argument rests «pon the facts assumed to exist, but which will be found not to 1x2 sustained by the testimony in the.cause. There ia, it is true, evidence going to prove iliat after Mason made the purchase of Chambers; lie contracted to sell the land to Flournoy for about two hundred dollars more than he was to pay Chambers, and that owing to subsequent events,. Flournoy was induced not to carry his contract with Mason into effect. But it is quite evident from the testimony, that Flournoy was induced not to execute the'contract from other considerations than those of doubts as to the goodness of Chambers’ title. In fact, Flournoy appears to have known of the rumours Which prevailed as to the patentee Meredith not having conveyed the land to his son befe re he entered upon the contract with Mason, and instead otj being influenced not to. close the contract by any doubts'about the goodness of the title, he is proved to have dono so in consequence of the refusal of Chambers to accept bis obligation for the purchase money due from Mason, and to release Mason from further liability.
But in argument, exceptions were taken by the counsel, to the conduct of Chambers; when the contract between Mason and Flournoy was about to be concluded, and an additional argument thence employed to prove the propriety of cancelling the contract of purchase by Mason. It was said tiiat on that occasion, the conduct of Chambers was calculated to increase the doubts which then prevailed as to the goodness of bis title; and hence it was contended, that after being instrumental in producing such’a result. his sale to Mason should not be permitted to stand. It should, however, be refeoilected, that the proposition made on that occasion, and which Chambers refused to accede to. is not such as either in a legal or moral point of view, he was bound to accept, ’Chambers seems to have previously agreed to accept Flournoy’s obligation in lieu of one that he. held upon Mason for part of the price of the land, but his agreement is proved to differ from the terms mentioned in the writings which were drawn for Flournoy to execute, and of c’oursc, in refusing to accept those writings, and *321 discharge Mason from his obligation, Chambers cannot he said to have acted in bad faith.
That vendoi. suppressed his opinion that his litio ivas doubtful, is no pound for rescission, unle.i.i vendop immediately abandons die con tract._— — If ho hold on till the price of the property has fallen, and the title is found complete, he must abide li.y iho contrae!.
Third ground for rescission, that vendor had not conveyed intimo, according t,o the ojutrae.t
Time, though not regarded ill equity as of the essence of a contract, must not. Slave been too far disregarded by the complainant, who seeks to com - pel a spool fio perforpiftic'.
But supposing the conduct of Chambers in refusing to accede to the terms of the contract, which was about to be concluded between Mason and Flournoy, was calculated to increase the doubts which may have existed as to the goodness' of title, and conceding that when he .sold the land to Mason, ho knew of the existence of those doubts, and failed fo disclose them to Mason, still, we apprehend, the contract should not, upon that ground, be set aside. If in any case, doubts as to the goodness of the title, which is afterwards proved to be perfect, could form a sufficient cause for cancelling a contract, the purchaser most indubitably should, recent!;/ after being informed of the doubts, abandon the contract and inform the vendor of his intention not to abide by it. Such, however, appears not to havti been the conduct of Mason. To the contrary, after knowing the goodness of Chambers* title was doubted, Mason is proved still to claim under it, attempted to speculate upon it, and never even indicated-a wish to be released from it, until by a fall in the price of land, he apprehended his contract might turn out to he a losing one.
It remains to notice one oilier ground relied on to cancel the contract Chambers appears not in fact to have conveyed the title to Mason, and that be still holds the possession of the land, and in argument it was contended, that his failure, promptly and according to the terms of the contract, to perform the stipulations on his part, forms a sufficient cause for a court of equity to interposeyuul set aside the contract.
Though not considered as of the essence of a contract, courts of equity are by no means inattentive to the time fixed on by the parties fora performance. The contracting parties should not only observe good faith in making their contract, but in tbe same good faith they should moreover evince a fixed determination, honestly and promptly to do whatever they contract to perform; and whenever applied to for the purpose of enforcing the specific execution of a 'contract, a court of equity always *322 looks-with a jealous eye upon a complainant who has not performed his part of the contract, according to the timé agreed on by the parties.
Failure to perform by complainant-, is some timos regarded as au abandonment — -In other casos, it ■will -jiulhorizo defendant to ■abandon.
Where, in case of a contract to convey on the payment of the purchase money, vendee refused to rescind, after-wards ven. dor made known to vendee his willingness to convey on receipt of the money, but no offer of the money was made, and vendor was ever after desirous to execute on his part, vendee cannot-havc a rescission, though after several years, he had never been tendered the conveyance..
So much so, that a failure on the part of a complainant, has in some cases,'been construed such a» abandonment of the contract, as to induce the couijt to refuse its aid in compelling a specific execution.
And in other cases again, the failure of one party to perform his part of a contract at the time agreed on, has been held to authorize the other party to abandon the contract, and recover the amount advanced by him under the contract.
But it is not in every, case of failure by one of the parties to perform at the day his part of the contract, that a court of equity will interpose for the purpose of annulling the contract, and the present casé is one in which it ought not, we apprehend, to be done. Though Chambers appears not to have performed, at the time fixed by the parties, the stipulations on his part, it is evident from the testimony in the cause, that his failure to do so did not proceed from a disposition to trifle with the contract, or from a fixed determination not honestly and faithfully to perform what he had undertaken to do. The title was not to be made by Chambers, until the day upon which the purchase money was to be paid by Mason, and the proof is clear, that on that day, and ever since, Chambers has been ready and desirous to convey the title upon receiving the purchase money. He does not, it is true, appear to have hunted out Masón, and made a formal tender of the conveyance on the day, as it was practicable for him to have done, but be is proved t® have had an interview with Mason, and made loiown to him his willingness to convey upon the receipt of the money, and Mason does not appear to have ever offered to pay. Besides, after the day upon which the money was to have been paid, Mason appears not to have been .willing to cancel the contract, but he is proved to have refused to do so, unless he was paid what he alleged he had been offered for his contract by others.
Under these circumstances, the court below was *323 audoubtediy correct in refusing to cancel the contract.
Vendor in such caso, thé possession, shall account for the rents fromPthe time possession was to have deved?”'8'1*
Wickliffe and. Triplett for appellant; Dana for defendant.
But instead of dismissing the bill, that court ought to. have taken an account of the rents and profits of the land, for the time Chambers has occupied it since the possession was, by the contract, to have been delivered to Mason, and credited the amount thereof against so much of the purchase money and interest." .
The decree must, therefore, be reversed with cost, the cause remanded to the court below, and after taking an account of the rents and profits, such a decree entered, as may conform to the principles of this opinion and the equity of the case.